## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**LESTER HACKLEY,**

      **Petitioner,**

**v.**                        **Case No.  4:17cv435-WS/CAS**

**MARK S. INCH, Secretary Florida Department of Corrections,[1]**

      **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On September 22, 2017, Petitioner, Lester Hackley, a prisoner in the custody of the Florida Department of Corrections, proceeding with counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1.  Respondent filed an answer on July 28, 2018, with pertinent portions of the record.  ECF No. 21.  Pursuant to a motion and order to seal the originally filed record, ECF Nos. 22, 25, Respondent filed an amended

_____

[1] The Clerk of Court shall substitute Mark. S. Inch as Secretary of the Florida Department of Corrections.  Mark S. Inch succeeded Julie L. Jones as Secretary of the Department of Corrections and is automatically substituted as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

response and redacted record on July 20, 2018.  ECF No. 23.  On January

7, 2019, Petitioner filed a reply.  ECF No. 38.

The matter was referred to the undersigned United States Magistrate

Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

Northern District of Florida Local Rule 72.2(B).  After careful consideration

of all the issues raised, the undersigned has determined that no evidentiary

hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the

pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief and this § 2254 petition should be denied.

## <u>Background and Procedural History</u>

Petitioner was charged by Third Amended Information filed

September 22, 2006, in the Circuit Court of Leon County, Florida, with

Count One, burglary of a conveyance with assault or battery on Arthsel

Byrd, and Count Two, burglary of a conveyance with assault or battery on

Anthony E. Smith, in violation of section 810.02(2)(a), Florida Statutes,

occurring on March 12, 2006.  Ex. A at 4.[2]  Jury trial was held on October

---

[2] Hereinafter, citations to the redacted state court record, "Ex. –," refer to exhibits A through YY submitted in conjunction with Respondent's amended answer.  *See* ECF No. 23.

3, 2006, and Petitioner was found guilty as charged on Count One and not guilty on Count Two.  Ex. A at 45-46; Ex. B at 195-97.  Petitioner was sentenced on October 30, 2006, to life in prison as a Prison Releasee Reoffender (PRR) under section 775.082, Florida Statutes.  Ex. A at 49-57, 87-91.  A timely appeal was not filed.  Petitioner, with counsel, filed an untimely notice of appeal on September 18, 2008.  Ex. A at 58.  That appeal was ultimately dismissed on November 19, 2008, for failure to pay a filing fee and reinstatement was denied on January 29, 2009.  *See* Exs. D, E, F, G, H, & I.

On October 9, 2008, in the state circuit court, Petitioner's counsel filed a motion for resentencing without citation to any rule of procedure authorizing the motion.  Ex. A at 59-60.  Petitioner alleged in the motion that "there was not sufficient evidence to support finding that at the time of sentencing" Petitioner was a Prison Releasee Reoffender.  *Id.* at 59.  The motion also made reference to ineffectiveness of counsel.  *Id.*  On October 10, 2008, the trial court dismissed the motion without prejudice to filing a motion to correct sentencing error under Florida Rule of Criminal Procedure 3.800(b)(2).  As to any allegation of ineffectiveness of counsel, the court found that because an appeal was still pending at that time, the court

lacked jurisdiction to consider a claim falling under Florida Rule of Criminal Procedure 3.850.  Ex. A at 61-62.

On June 2, 2009, Petitioner, with different counsel, filed a motion to correct sentence under Rule 3.800(b)(2) asserting that burglary of a conveyance with person assaulted was not a qualifying offense under section 775.082, Florida Statutes, for imposition of a PRR sentence.  Ex. A at 63-64.  A hearing was held on July 1, 2009, Ex. J., and the court entered an order on July 23, 2009, granting the motion.  Ex. A at 71-74.  On December 29, 2009, Petitioner was resentenced to 75 months in prison. Ex. K; Ex. A at 95-103.  The State of Florida appealed and briefs were filed in the First District Court of Appeal.  Exs. L, M.  On October 29, 2010, the appellate court affirmed but certified conflict with a decision of the Fifth District Court of Appeal.  Ex. N.  *See* State v. Hackley, 93 So. 3d 327 (Fla. 1st DCA 2010).

The Florida Supreme Court granted review and issued an opinion on July 5, 2012, quashing the decision of the First District Court of Appeal. Ex. Q.  The Florida Supreme Court held that burglary of a conveyance with an assault is a qualifying felony under section 775.082(9)(a)1.o, Florida Statutes.  *See* State v. Hackley, 95 So. 3d 92 (Fla. 2012).  The mandate was issued to the First District Court of Appeal on August 2, 2012.  Ex. R.

The First District Court of Appeal entered an Order on Mandate on August 21, 2012, setting aside its October 29, 2010, decision and replacing it with the July 5, 2012, decision of the Florida Supreme Court.  Ex. S.

On remand to the circuit court, the State filed a motion to vacate the July 23, 2009, order granting Petitioner's motion to correct sentencing error and the judgment and sentence entered upon that order.  Ex. T at 201-03. The motion also asked the circuit court to reinstate the mandatory PRR life sentence previously imposed on Petitioner.  *Id.*  A hearing was held on November 26, 2012, where Petitioner asserted that re-imposition of the life sentence would violate Double Jeopardy because he had already served the 75-month sentence.  Ex. T at 260-70.  Petitioner also argued that trial counsel rendered ineffective assistance by failing to file a timely appeal from the original judgment and sentence, but the court noted that such an issue was one for which Petitioner would need to seek a belated appeal in the First District Court of Appeal.  *Id.* at 264-65.

A judgment and sentence was filed November 26, 2012, in which the trial court noted that the "court vacated July 23, 2009, order correcting illegal sentence; original date of sentence of October 30, 2008 reaffirmed; court vacated judgment and sentence dated Dec. 29, 2009."  Ex. T at 240. A written order was filed on November 29, 2012, vacating the July 23,

2009, order granting motion to correct illegal sentence; vacating the December 29, 2009, judgment; and reinstating the October 30, 2006, judgment.  Ex. T at 245.

Timely appeal was filed in the state First District Court of Appeal in Case No. 1D12-5934 by Petitioner from the judgment and sentence rendered on November 26, 2012.  Ex. T at 246.  Briefing was stayed pending resolution of other pending motions.  While the appeal was pending, counsel filed a motion to correct sentencing error under Rule 3.800(b)(2) in the trial court on August 23, 2013, alleging that the PRR sentence was illegal because the jury did not find facts necessary to show Petitioner qualified as a prison releasee reoffender, in violation of Alleyne v. United States, 570 U.S. 99 (2013).  The trial court denied the motion on September 4, 2013, finding that Petitioner qualified for a PRR sentence without a jury finding because it fell under the prior conviction exception of Apprendi v. New Jersey, 530 U.S. 466 (2000).  Ex. V at 300-01.

Also while the appeal from the new judgment and sentence was pending, Petitioner filed another Rule 3.800(b)(2) motion to correct sentencing error asserting that because Petitioner served the 75-month sentence, the Double Jeopardy Clause and the Due Process Clause prohibited the court from sentencing him to a greater sentence than the one

he had completed.  Ex. W at 303-06.  The trial court denied this claim on October 18, 2013.  Ex. W at 307-08.

During the pendency of the same appeal, on November 26, 2013, Petitioner's counsel filed a petition for writ of habeas corpus in the state First District Court of Appeal seeking a belated appeal from the original October 30, 2006, judgment and sentence.  Ex. X.  That case was assigned a separate case number—No. 1D14-5767.  An amended petition for belated appeal was filed on December 4, 2013.  Ex. BB.  The matter was relinquished to the circuit court for an evidentiary hearing, which was held on May 22, 2014.  Ex. EE, FF.  The circuit court entered an order on May 23, 2014, recommending that the petition for belated appeal be denied and, on August 12, 2014, the First District Court of Appeal denied the amended petition for belated appeal on the merits.  Ex. JJ.  *See* Hackley v. State, 147 So. 3d 984 (Fla. 1st DCA 2014) (table), *cert. denied*, Hackley v. Florida, 135 S. Ct.  984 (2015).

The appeal that was still pending in the First District Court of Appeal, Case No. 1D12-5934, resumed with new appellate counsel for Petitioner, who filed a fourth Rule 3.800(b)(2) motion in January 2015 alleging that the PRR sentence violated the constitutional guarantees of Equal Protection, Due Process, and the prohibition against Cruel and Unusual Punishment.

Ex. MM at 1-12; 18-263.  Petitioner alleged that the PRR statute was invoked in a racially discriminatory manner.  The trial court denied the motion to correct sentencing error, finding that the allegation was not one alleging a sentencing error cognizable under Rule 3.800(b).  Ex. MM at 16-17.  The court concluded that Rule 3.800(b) was intended to correct errors in sentencing orders, not to challenge pre-sentence determinations by the State Attorney to seek a PRR sentence.  *Id.* at 17.

Petitioner filed his brief in Case No. 1D12-5934, which appealed the re-imposed judgment and sentence as well as the denial of the Rule 3.800(b)(2) motions.  Ex. NN.  The issues raised on appeal were: (1) fundamental error in re-imposing a life sentence based on the PRR statute because it was selectively and disproportionately applied to black defendants; (2) discriminatory methodology that applied the PRR statute to Petitioner violated Due Process and protection against Cruel and Unusual Punishment; (3) error in denying opportunity to present evidence of racial discrimination in an evidentiary hearing on motion to correct sentencing error; (4) error in denying motion to correct sentencing error based on Double Jeopardy; and (5) error in denying motion to correct sentencing error based on violation of Sixth Amendment right to jury trial.  *Id.*

On December 8, 2015, the First District Court of Appeal affirmed the

re-imposed judgment and sentence and the denial of the motion to correct

sentencing error, addressing only one issue and stating in pertinent part:

> Appellant, Lester Hackley, challenges the reimposition of a
> mandatory life sentence after the supreme court determined in
> State v. Hackley, 95 So. 3d 92, 93 (Fla. 2012), that his
> conviction for burglary of a conveyance with an assault was a
> qualifying offense under the prison releasee reoffender statute,
> section 775.082(9), Florida Statutes (2006). Appellant raises
> multiple issues, but we write only to address his claim of
> sentencing error under Florida Rule of Criminal Procedure
> 3.800(b) based on alleged racial discrimination by the
> prosecuting authorities in seeking enhancement under the
> statute. Although constitutional claims may be raised in a
> 3.800(b) motion, the rule preserves errors apparent "in
> sentence-related orders, not any error in the sentencing
> process." Jackson v. State, 983 So. 2d 562, 572 (Fla. 2008)
> (emphasis in original). Alleged discrimination by the
> prosecution in seeking enhancement is not an error apparent
> on the face of the order itself; thus, the 3.800(b) motion failed to
> preserve this issue for appellate review. **Because Appellant
> did not raise the alleged error during the resentencing
> hearing, this Court is precluded from reaching the merits of
> this issue**.

Hackley v. State, 189 So. 3d 154, 155 (Fla. 1st DCA 2015) (mem)

(rehearing and motion for certification denied January 19, 2016) (emphasis

added). The Florida Supreme Court denied review on June 24, 2016.

Ex. YY.

On September 22, 2017, Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following grounds for relief:

>(1) Fundamental error in imposing a mandatory life sentence under the Prison Releasee Reoffender (PRR) Act because it was applied selectively and disproportionately on black male defendants including Petitioner in violation of Equal Protection;
>
>(2) Discriminatory methodology employed in application of the PRR statute violated Petitioner's right to Due Process and the prohibition against Cruel and Unusual Punishment'
>
>(3) Re-imposition of the PRR sentence violated Petitioner's Sixth Amendment right to a jury trial to make factual findings necessary to show the offense was committed within three years of Petitioner's release from prison;
>
>(4) Resentencing Petitioner to a greater sentence than the one he had already served for the same crime violated Petitioner's right to Due Process and his Fifth Amendment right to not be twice placed in jeopardy for the same offense; and
>
>(5) Trial counsel rendered ineffective assistance for failing to file a timely notice of appeal from the original judgment and sentence and subsequent counsel rendered ineffective assistance in failing to pay a filing fee causing the later-filed notice of appeal to be dismissed.

ECF No. 1 at 14-37.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts."  Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . .  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' "  Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

 "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner

must have apprised the state court of the federal constitutional claim, not

just the underlying facts of the claim or a "somewhat similar state-law

claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting

Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  For remedies to be

exhausted, "the petitioner must have given the state courts a 'meaningful

opportunity' to address his federal claim."  Preston v. Sec'y, Fla. Dep't of

Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416

F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim

in each appropriate state court in order to alert the state courts to the

federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995);

Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999).  The State must have been provided the

" 'opportunity to pass upon and correct' alleged violations of its prisoners'

federal rights."  Henry, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275

(citation omitted)).  "This rule of comity reduces friction between the state

and federal court systems by avoiding the 'unseem[liness]' of a federal

district court's overturning a state court conviction without the state courts

having had an opportunity to correct the constitutional violation in the first

instance." O'Sullivan, 526 U.S. at 845; see also Picard, 404 U.S. at 275 ("If

the exhaustion doctrine is to prevent 'unnecessary conflict between courts

equally bound to guard and protect rights secured by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at 1302).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim).  A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or

prejudice if necessary to correct a fundamental miscarriage of justice.

Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  To satisfy the

miscarriage of justice exception, the Petitioner must show that a

constitutional violation has occurred that "probably resulted in a conviction

of one who is actually innocent"—that it is more likely than not that no

reasonable juror would have convicted him—which is a stronger showing

than is necessary to establish prejudice.  *See* Schlup v. Delo, 513 U.S.

298, 327 (1995).  This standard "thus ensures that petitioner's case is truly

'extraordinary.' "  *Id.* (citing McCleskey, 499 U.S. at 494).  Such a case is

"extremely rare."  Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state

court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181.

The state court's factual findings are entitled to a presumption of

correctness and to rebut that presumption, the Petitioner must show by

clear and convincing evidence that the state court determinations are not

fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is

not the province of a federal habeas court to reexamine state-court

determinations on state-law questions" and "[i]n conducting habeas review,

a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502

U.S. 62, 67-68 (1991).  *See also* <u>Swarthout v. Cooke</u>, 562 U.S. 216, 222

(2011) ("[W]e have long recognized that 'a "mere error of state law" is not a

denial of due process.' " (quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 121, n.21

(1982))).

Further, under § 2254(d), federal courts have "no license to

redetermine credibility of witnesses whose demeanor has been observed

by the state trial court, but not by them."  <u>Marshall v. Lonberger</u>, 459 U.S.

422, 434 (1983).  "Determining the credibility of witnesses is the province

and function of the state courts, not a federal court engaging in habeas

review."  <u>Consalvo v. Sec'y, Dep't of Corr.</u>, 664 F.3d 842, 845 (11th Cir.

2011).  Credibility and demeanor of a witness are considered to be

questions of fact entitled to a presumption of correctness under the AEDPA

and the Petitioner has the burden to overcome the presumption by clear

and convincing evidence.  *Id.* at 845.

 For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct.  *See*

Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at

690).

To demonstrate prejudice under Strickland, a defendant "must show

that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  466 U.S. at

694.  "A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question

'is not whether a federal court believes the state court's determination'

under the Strickland standard 'was incorrect but whether that determination

was unreasonable—a substantially higher threshold.' "  Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550

U.S. 465, 473 (2007)).  "And, because the <u>Strickland</u> standard is a general

standard, a state court has even more latitude to reasonably determine that

a defendant has not satisfied that standard."  <u>Mirzayance</u>, 556 U.S. at 123.

It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim

evaluated under the § 2254(d)(1) standard."  *Id.*  Both deficiency and

prejudice must be shown to demonstrate a violation of the Sixth

Amendment.  Thus, the court need not address both prongs if the petitioner

fails to prove one of the prongs.  <u>Strickland</u>, 466 U.S. at 697.

### **Ground 1: Fundamental Error in PRR Sentencing**

In Ground 1, Petitioner contends fundamental error occurred in

imposition of his PRR sentence in that the mandatory life sentence he

received was applied to him in violation of the Equal Protection Clause.

ECF No. 1 at 14.  He contends PRR sentencing was selectively and

disproportionately imposed on him as a black male defendant.  ECF No. 1

at 14.  This claim of violation of equal protection was not raised in his

sentencing hearing but was raised for the first time in a motion to correct

sentence under Florida Rule of Criminal Procedure 3.800(b)(2) that was

filed during Petitioner's appeal from his reinstated sentence after the

November 26, 2012, hearing on remand from the appellate court.[3]  Ex. MM at 1-12.

Petitioner alleged in the Rule 3.800 motion that he had obtained data from the State Attorney's office and the Department of Corrections which revealed that the State Attorney sought PRR sentencing for a larger percentage of black defendants eligible for PRR sentencing than white defendants eligible for PRR sentencing during the year 2006.  *Id.* at 3-4. He also alleged that data showed the prosecutor in his case sought no PPR sentences against white defendants for years 2003 through 2007.  *Id.* at 4.  The trial court denied an evidentiary hearing and denied the motion, concluding that the claim was not cognizable in a Rule 3.800(b)(2) proceeding because it attacks only the pre-sentence determination by the State Attorney and not an error in the sentence.  *Id.* at 16-17.  The court noted, "[Petitioner] is not alleging that he is ineligible for the designation. Nor is he claiming, as did the defendant in Mapp [v. State, 71 So. 3d 776,

---

[3] Petitioner's appeal was from the reinstated judgment and sentence dated November 26, 2012, in which the trial court noted that the "court vacated July 23, 2009, order correcting illegal sentence; original date of sentence of October 30, 2008 reaffirmed; court vacated judgment and sentence dated Dec. 29, 2009."  Ex. T at 240. A written order was filed on November 29, 2012, vacating the July 23, 2009, order granting Petitioner's motion to correct illegal sentence; vacating the December 29, 2009, judgment and 75-month sentence; and reinstating the October 30, 2006, judgment and PRR sentence.  Ex. T at 245.

780 (Fla. 2011)], a lack of notice that the State would seek the designation." *Id.* at 17.

Petitioner appealed both the sentence and denial of his Rule 3.800(b)(2) motion. Ex. NN. The state appellate court affirmed Petitioner's PRR life sentence without discussion and affirmed the denial of his motion to correct sentencing error, addressing only one of his Rule 3.800 issues. The court stated in pertinent part that Rule 3.800 preserves errors apparent in sentence-related orders, not any error in the sentencing process. Hackley, 189 So. 3d at 155 (citing Jackson v. State, 983 So. 2d 562, 572 (Fla. 2008)). In affirming denial of the motion to correct sentence, the appellate court also concluded that the error alleged by Petitioner in his Rule 3.800 motion was not preserved for appellate review because he did not raise it during the resentencing hearing.[4] *Id.* The appellate court did not expressly discuss Petitioner's claim that the circumstances surrounding imposition of his sentence constituted fundamental error. Review was denied in the Florida Supreme Court.

---

[4] The district court was correct that in the hearing on remand from the district court to vacate the 75-month sentence and reaffirm the original PRR sentence, Petitioner did not raise a claim of unconstitutional discrimination in the application of the PRR statute by the State Attorney or the prosecutor in his case. *See* Ex. T at 260-69.

Respondent contends that the claim is unexhausted and procedurally defaulted because under state law it was found not cognizable in a Rule 3.800(b)(2) proceeding—a ruling below that constituted a state procedural bar.  The United States Supreme Court has held that presenting a claim to the state court in a procedural context in which its merits will not be considered, absent special circumstances, does not constitute fair presentation.  *See* Castille v. Peoples, 489 U.S. 346, 351 (1989); *see also* Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) (observing that a state habeas petitioner who fails to raise a federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default).  To foreclose federal review, the state bar must be firmly established and regularly followed.  Ford v. Georgia, 498 U.S. 411, 423-24 (1991).

The procedural bar as to Rule 3.800 cited by the appellate court in this case is firmly established and regularly followed.  *See* Jackson v. State, 983 So. 2d 562 (Fla. 2008). The Florida Supreme Court made clear that not all errors that occur in the sentencing context constitute a "sentencing error" under rule 3.800(b); "[i]nstead, errors we have recognized as 'sentencing errors' are those apparent in orders entered as a

result of the sentencing process." *Id.* at 572. The court set forth a non-exhaustive list of "sentencing errors" subject to rule 3.800(b)(2): claims that the defendant was improperly habitualized; that the sentence exceeded the statutory maximum; that the scoresheet was inaccurate; that the trial court improperly imposed a departure sentence; that the written order deviated from the oral pronouncement; that the trial court improperly assessed costs; that the trial court improperly sentenced the defendant to simultaneous incarceration and probation; that the trial court failed to award credit for time served; and that the trial court failed to address in writing its decision to impose adult sanctions.[5] *Id.* at 572-73. The court explained that, generally, these types of errors relate to the ultimate sanctions imposed and are not apparent until the sentencing order itself is entered. *Id.* Thus, the rule is intended to provide a mechanism for a defendant to raise error that he would not have had the opportunity to object to before the sentencing order was entered. *Id.* at 573. *See also* Rosado v. State, 129 So. 3d 1104, 1108 (Fla. 5th DCA 2013) (holding that vindictive sentencing is not an error in the sentencing order and is therefore not

---

[5] The court in Jackson also mentioned that the constitutionality of a sentencing statute has been allowed in a Rule 3.800 proceeding, citing Salters v. State, 758 So. 2d 667 (Fla. 2000), but that case involved the invalidity a sentencing statute based on a violation, in its enactment, of the single-subject rule of the Florida Constitution, not a claim of unconstitutional application of the provisions of a sentencing statute in the sentencing proceeding.

within Rule 3.800(b)); Pifer v. State, 59 So. 3d 225 (Fla. 1st DCA 2011)

(resentencing by a successor judge without showing of necessity is not a

sentencing error that can be preserved by motion to correct sentencing

error).  The court in Pifer explained:

> Under Jackson, "'a "sentencing error" that can be preserved
> under rule 3.800(b)(2) is an error in the sentence itself—not any
> error that might conceivably occur during a sentencing
> hearing.'"  *Id.* at 573 (quoting Jackson v. State, 952 So. 2d 613,
> 616 (Fla. 2d DCA 2007) (Stringer, J., specially concurring)).
> Rule 3.800(b) "may be used to correct and preserve for appeal
> any error in an order entered as a result of the sentencing
> process—that is, orders related to the sanctions imposed."
> Jackson, 983 So. 2d at 574.  However, a claim of error in the
> sentencing process is not cognizable in a motion under rule
> 3.800(b).  *See id.*

Pifer, 59 So. 3d at 228.  The court also noted, "As such, [defendant's] rule

3.800(b)(2) motion could not preserve this claim of error.  It can be

reviewed only for fundamental error."  *Id.* (citing Jackson, 983 So. 2d at

568-69).

Thus, to the extent Petitioner's claim is based on having raised it in a

Rule 3.800(b)(2) motion, the claim is unexhausted.  The state court's

refusal to consider petitioner's claim arising from his Rule 3.800(b)(2)

motion as procedurally barred rested on independent and adequate state

grounds that preclude federal habeas review.  *See, e.g.*, Jennings v.

McDonough, 490 F.3d 1230, 1247-48 (11th Cir. 2007) (holding that state

court's conclusion that petitioner's claims were procedurally barred by Florida's rule against successive postconviction motions was a state law ground independent of the federal question and adequate to support the state court's judgment, thereby rendering the claims procedurally defaulted on federal habeas review).

To circumvent the state's procedural bar in a federal habeas proceeding, Petitioner must demonstrate cause and prejudice or manifest miscarriage of justice. *See, e.g.,* Dretke v. Haley, 541 U.S. 386, 388 (2004); McClesky, 499 U.S. at 494. Petitioner has provided nothing to demonstrate cause, prejudice or a manifest miscarriage of justice. He suggests that the data he now seeks to rely on "was only made available to Petitioner and collected, through counsel, after counsel's appointment on Petitioner's direct appeal of the resentencing." ECF No. 38 at 8 (Reply). However, Petitioner was represented by counsel at the November 26, 2012, hearing and by other counsel at trial and at his first PRR sentencing. He does not proffer any explanation as to how the data he cites was not "made available" to any of his other counsel or that it was ever requested by any of his counsel. Nor does he allege that his counsel at the time of the November 26, 2012, hearing requested similar data. Petitioner has not

cited any basis to excuse the procedural bar precluding his equal protection claim arising from his Rule 3.800(b)(2) motion.[6]

Notwithstanding Petitioner's inability to preserve and exhaust this discrimination issue in the state court via a Rule 3.800(b)(2) motion, Petitioner appears to have made an attempt to raise this alleged error in the sentencing process as a fundamental error in his direct appeal from the re-imposition of his PRR sentence. The issue statement in his initial brief cites fundamental error. Ex. NN at 10. The arguments presented in that issue argue that discrimination in the prosecutorial discretion in choosing which eligible defendants will be subject to PRR sentencing violated equal protection. *Id.* at 10-13. The First District Court of Appeal did not expressly address the fundamental error aspect of his issue, addressing only the issue as it was denied in the Rule 3.800(b)(2) motion. However, the state court affirmed the PRR sentence and that affirmance can be said to have denied any fundamental error claim.

---

[6] Petitioner asserts in his reply that the statistical data was "only made available" to him and collected through counsel after the direct appeal was filed and that was the "first opportunity" for raising the issue. ECF No. 38 at 8. This ignores the fact that Petitioner had a number of different counsel throughout the state court proceedings, including at trial when the state filed a notice of seeking PRR sentencing, *see* Ex. C at 119; at the first sentencing hearing at which he received a PRR sentence; and at the hearing six years later when the PRR sentence was reinstated. Thus, Petitioner has not shown that he could not have sought the statistical data at an earlier time and presented it to the trial court in a manner to preserve the claim and make a record on which the state courts could rule on the merits of his constitutional claim.

Assuming that Petitioner sufficiently exhausted his claim that the PRR

sentence, as applied to him, violated his federal constitutional right to equal

protection by raising it as a fundamental error on appeal from his sentence,

that claim should be denied as without merit.  Section 775.082, Florida

Statutes, provides in pertinent part:

> 3.  If the state attorney determines that a defendant is a prison releasee reoffender as defined in subparagraph 1., **the state attorney may seek to have the court sentence the defendant as a prison releasee reoffender.** Upon proof from the state attorney that establishes by a preponderance of the evidence that a defendant is a prison releasee reoffender as defined in this section, such defendant is not eligible for sentencing under the sentencing guidelines and must be sentenced as follows:

> a. For a felony punishable by life, by a term of imprisonment for life;

> b. For a felony of the first degree, by a term of imprisonment of 30 years;

> c. For a felony of the second degree, by a term of imprisonment of 15 years; and

> d. For a felony of the third degree, by a term of imprisonment of 5 years.

> (b) A person sentenced under paragraph (a) shall be released only by expiration of sentence and shall not be eligible for parole, control release, or any form of early release.  Any person sentenced under paragraph (a) must serve 100 percent of the court-imposed sentence.

> (c) Nothing in this subsection shall prevent a court from imposing a greater sentence of incarceration as authorized by law, pursuant to s. 775.084 or any other provision of law.

> (d) 1. It is the intent of the Legislature that offenders previously released from prison who meet the criteria in

paragraph (a) be punished to the fullest extent of the law and as provided in this subsection, **unless the state attorney determines that extenuating circumstances exist which preclude the just prosecution of the offender,** including whether the victim recommends that the offender not be sentenced as provided in this subsection.

2. **For every case in which the offender meets the criteria in paragraph (a) and does not receive the mandatory minimum prison sentence, the state attorney must explain the sentencing deviation in writing and place such explanation in the case file maintained by the state attorney**. . . .

§ 775.082(9)(a)(3), Fla. Stat. (2006) (emphasis added).

The Florida Supreme Court held in <u>State v. Cotton</u>, 769 So. 2d 345 (Fla. 2000), that the PRR statute provides the prosecutor and the executive branch with prosecutorial discretion as to which defendants should receive PRR sentencing. *Id.* at 351. The Court stated that "absent a compelling equal protection argument, the exercise of such prosecutorial discretion is not generally subject to judicial review." *Id.* Thus, the Court also recognized that "a defendant may still mount an equal protection challenge where prosecutorial discretion is alleged to have been deliberately exercised pursuant to an 'unjustifiable standard.' " *Id.* (comparing <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 364 (1978) (observing that "[w]ithin the limits set by the legislature's constitutionally valid definition of chargeable offenses, 'the conscious exercise of some selectivity in

enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification' ") (bracketed material in original)).

Because Petitioner did not object to PRR sentencing on these grounds at the sentencing hearing and did not present an evidentiary record at that time, his bare citation of statistical percentages on appeal in a fundamental error claim does not establish that PRR sentencing was sought for him based on an unjustifiable standard or because he is a black male. The statute allows the prosecutor to seek PRR sentencing, or not, depending on the "extenuating circumstances" existing at the time.  In those cases in which PRR sentencing is not sought for eligible defendants, the statute requires the prosecutor to explain the sentencing deviation in writing and place such explanation in the case file maintained by the state attorney.  Other than in a conclusory fashion, Petitioner did not present to any state court data that would have allowed the court to determine if Petitioner's sentencing had been based on a denial of equal protection.

Simple disparity in percentages, as cited by Petitioner, does not explain anything about how the State attorney or the prosecutor chose which defendants, under special facts and extenuating circumstances,

should not be subjected to PRR sentencing.  More importantly, citation of these statistics does not show that the PRR sentencing act was applied to Petitioner with discriminatory purpose.  A defendant cannot successfully challenge his sentence based solely on statistical evidence of racial disparity in sentencing.  Defendants bear the "burden of proving the existence of purposeful discrimination."  McCleskey v. Kemp, 481 U.S. 279, 292-94 (1987) (finding a defendant who alleges an equal protection violation must prove both a discriminatory purpose and effect; he or she must present evidence specific to his own case, instead of relying on statistical evidence of disparities).  To meet this burden, a criminal defendant "must prove that the decisionmakers in *his* case acted with discriminatory purpose."  *Id.* at 292 (emphasis in original).  *See also* Foster v. State, 614 So. 2d 455, 463 (Fla. 1992) (citing McCleskey and finding that the defendant could not prove prosecutors acted with discriminatory purpose by presenting statistics that "white-victim" defendants were more likely to be convicted of first-degree murder; he presented no evidence of purposeful discrimination in his own case); Hartley v. State, 650 So. 2d 1044, 1048-49 (Fla. 4th DCA 1995) (holding the defendant was not entitled to a hearing on his equal protection claim, where he presented statistics that more minorities were assigned to the habitual felony offender division

than whites, because his claims rested on actions of unrelated decision makers); Delancy v. State, 256 So. 3d 940, 947 (Fla. 4th DCA 2018) (holding that "[i[t is not within our province to reconsider and reject the United States Supreme Court's determination in McCleskey" that a defendant must provide specific evidence showing discriminatory purpose in his case).

The state court was not provided with any basis to find that Petitioner was similarly situated with other defendants who received more favorable treatment or that the prosecutor committed purposeful discrimination in Petitioner's specific case.  Because the matter was not raised and presented at the sentencing hearing, and only bare allegations of discrimination based on statistical percentages were presented on appeal to support a fundamental error claim, denial of that fundamental error claim by the appellate court cannot be said to be contrary to any clearly established federal law as determined by the United States Supreme Court or that it was an unreasonable determination in light of the record.[7]  Federal habeas relief pursuant to § 2254 on Ground 1 should be denied.

---

[7] A law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  See Thaler v. Haynes, 559 U.S. 43, 47 (2010); Woods v. Donald, 135 S. Ct. 1372, 1376, (2015) (reiterating that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of the Court's decisions.

## Ground 2: Due Process and Cruel and Unusual Punishment

In Ground 2, Petitioner contends that discriminatory methodology employed in application of the PRR statute violated his right to due process and the constitutional protection against cruel and unusual punishment. ECF No. 1 at 20.  He argues that the statistical data he cited in his Rule 3.800(b)(2) motion and in his appeal from his re-imposed PRR sentence demonstrates that the PRR statutory scheme, which allows prosecutors to decline to seek a PRR sentence where there are "extenuating circumstances" without giving any guidelines, safeguards, or opportunity for judicial review to ensure fairness, violates his constitutional rights.  ECF No. 1 at 20.  He contends that this statutory scheme violates due process and Eighth Amendment prohibition of cruel and unusual punishment when it results from racial discrimination, as he contends is shown by the statistical data.  *Id.* at 20-21.  Petitioner states in his § 2254 petition that the claim was raised in his Rule 3.800(b)(2) motion in the trial court and in his direct appeal from re-imposition of the judgment and PRR sentence.  ECF No. 1 at 22.

Respondent contends that this claim is unexhausted.  As discussed in Ground 1 *supra*, the state trial court and the state First District Court of Appeal found that the claim of illegality of the PRR sentence based on the

racial discrimination grounds in the prosecutorial discretion cited by
Petitioner was not cognizable in a Rule 3.800(b)(2) proceeding and had not
been preserved at the sentencing hearing.  Ex. MM at 16-17; Ex. RR.  As
discussed in Ground 1, the state procedural bar cited by the state courts is
firmly established and regularly followed.  Because the claim was not
raised in either of his sentencing hearings or at trial when the notice of
seeking PRR sentencing was filed, and because the claim was not
cognizable in the Rule 3.800(b)(2) proceeding, it is unexhausted and
procedurally defaulted.  Also as discussed in Ground 1, the claim of
discrimination in PRR sentencing was argued on appeal as a fundamental
error but denial of it by the state court was not shown to be unreasonable.

Moreover, even if the claim was not procedurally defaulted, it lacks
merit and should be denied.  The bare statistics cited by Petitioner did not
provide the state court with a basis to conclude that the methodology of the
PRR statute allows for grossly disproportionate sentences in violation of the
Eighth Amendment or that the statute is unconstitutionally vague or without
standards.  As for Petitioner's argument that the PRR statute violates the
Eighth Amendment, it should be remembered that "the precise contours of
[the gross disproportionality principle] are unclear, applicable only in the
'exceedingly rare' and 'extreme' case."  Lockyer v. Andrade, 538 U.S. 63,

73 (2003).  The Florida First District Court of Appeal recently had occasion

to consider this Eighth Amendment issue as it relates to PRR sentencing in

Jackson v. State, 241 So. 3d 914 (Fla. 1st DCA 2018) *cert. denied sub*

*nom.*, Jackson v. Fla., No. 18-6243, 2019 WL 113255 (U.S. Jan. 7, 2019).

The court stated:

> Finally, we reject Jackson's argument that his [PRR] life
> sentence violates the Eighth Amendment.  The Florida
> Supreme Court has said that "to violate the Cruel and Unusual
> Punishments Clause, a prison sentence must, at least, be
> grossly disproportionate to the crime."  Adaway v. State, 902
> So. 2d 746, 749 (Fla. 2005).  A life sentence for armed robbery
> falls well short of that standard. *Cf.*, *e.g.*, Harmelin v. Michigan,
> 501 U.S. 957, (1991) (no Eighth Amendment violation with life
> sentence for drug possession); Rummel v. Estelle, 445 U.S.
> 263 (1980) (no Eighth Amendment violation with life sentence
> for obtaining money by false pretenses based on recidivist
> statute).  We likewise reject Jackson's argument that his
> sentence violates the Florida Constitution's prohibition against
> cruel and unusual punishments.  See Art. I, § 17, Fla. Const.
> (noting that Florida provision "shall be construed in conformity
> with decisions of the United States Supreme Court which
> interpret the prohibition against cruel and unusual
> punishment").
>
> To the extent Jackson argues his sentence is too harsh
> because it could have been lighter if he committed his crimes
> twelve days later than he did, his timing does not make his
> punishment any more grossly disproportionate.  It is up to the
> Legislature to determine where the appropriate cutoff for a PRR
> sentence lies, and the Florida Legislature chose three years.
> See Rummel, 445 U.S. at 285 ("Like the line dividing felony
> theft from petty larceny, **the point at which a recidivist will be
> deemed to have demonstrated the necessary propensities
> and the amount of time that the recidivist will be isolated
> from society are matters largely within the discretion of the**

> **punishing jurisdiction**.").  Regardless, the Florida Supreme
> Court has held that mandatory-minimum sentences under the
> PRR Act do not violate the Eighth Amendment.  State v. Cotton,
> 769 So. 2d 345, 356 (Fla. 2000) ("[T]he [PRR] Act's mandatory
> sentencing scheme does not constitute 'cruel or unusual'
> punishment.").

Jackson, 241 So. 3d at 918 (footnote omitted) (emphasis supplied).  Thus,

statutes that require increased sentences for repeat offenders "ha[ve] been

sustained against contentions that they violated 'constitutional strictures

dealing with double jeopardy, *ex post facto* laws, cruel and unusual

punishment, due process, equal protection, and privileges and immunities.'"

Rummel v. Estelle, 445 U.S. 263, 268 (1980) (quoting Spencer v. Texas,

385 U.S. 554, 560 (1967)).

Petitioner's argument that the PRR statute is invalid for lack of judicial

review of the exercise of prosecutorial discretion is also without merit.  The

Florida Supreme Court held in State v. Cotton, 769 So. 2d 345 (Fla. 2000),

that "absent a compelling equal protection argument, the exercise of such

prosecutorial discretion is not generally subject to judicial review."  *Id.* at

351 (citing Wayte v. United States, 470 U.S. 598, 607 (1985)).  Regardless

of any procedural default, Petitioner has failed to present a "compelling"

equal protection or other constitutional argument demonstrating the

unconstitutionality of the PRR statute and its application to Petitioner.

Thus, even if his claim is not procedurally defaulted, he has not

demonstrated that the state court's adjudication of his claim was contrary to any clearly established federal law as determined by the United States Supreme Court or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  Ground 2 should be denied.

## Ground 3: No Jury Findings on Date of Release

Petitioner contends in this ground that re-imposition of the PRR life sentence violated his Sixth Amendment right to jury trial findings necessary to show the offense was committed within three years of his release from prison.  ECF No. 1 at 25.  He did not raise this claim during trial, at his original sentencing hearing in 2006, or at the re-imposition of his PRR sentence.  He raised it for the first time in a Rule 3.800(b)(2) motion filed in 2013 during the direct appeal after re-imposition of the PRR sentence.  Ex. V at 295-299.  The trial court denied the claim, concluding that jury findings were not required for PRR sentencing based on the prior conviction exception set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000).  Ex. V at 300-01.  The issue was included in Petitioner's direct appeal from sentencing, but the appellate court did not expressly address the claim.

Instead, the court affirmed the sentence and the denial of the Rule 3.800(b)(2) motion.  Ex. RR.

Petitioner relies on <u>Alleyne v. United States</u>, 570 U.S. 99, 103 (2013), which held in reliance on <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and the Sixth Amendment that any fact that increases the mandatory minimum sentence for a crime is an "element" of the crime which must be submitted to a jury.  Respondent contends that the issue is unexhausted and procedurally defaulted because it was not presented in each state court for determination prior to filing it in this § 2254 petition.  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim.  <u>Henry</u>, 513 U.S. at 365; <u>Picard</u>, 404 U.S. at 275; <u>O'Sullivan</u>, 526 U.S. at 845.

At trial, the court was not given an opportunity to address the claim that the jury should be presented with the issue of the date of release if the State intended to go forward on its Notice to Seek PRR sentencing.  After trial, the sentencing court at the original sentencing was not given an opportunity to rule on the constitutional claim.  The issue was not presented to the state court at the hearing in which the PRR sentence was re-imposed.  Regardless of any procedural bar, however, the claim should be denied as without merit.

In <u>Apprendi v. New Jersey</u>, the Supreme Court held that any fact that increases a defendant's statutory maximum sentence, other than the fact of a prior conviction, must be found by a jury or admitted by the defendant. In <u>Alleyne</u>, the Supreme Court extended this rule to apply to any fact that increases a mandatory-minimum sentence. <u>Alleyne</u>, 570 U.S. at 103. After <u>Apprendi</u> but before <u>Alleyne</u>, the Florida Supreme Court upheld the constitutionality of the PRR Act, rejecting arguments that the Act violated <u>Apprendi</u>. *See* <u>Robinson v. State</u>, 793 So. 2d 891, 893 (Fla. 2001). Since <u>Alleyne</u>, other Florida courts have rejected this same contention that, based on <u>Alleyne</u> and <u>Apprendi</u>, the jury must determine the defendant's eligibility for PRR sentencing. *See* <u>Williams v. State</u>, 143 So. 3d 423, 424 (Fla. 1st DCA 2014), *rev. denied*, 157 So. 3d 1052 (Fla. 2014); <u>Sims v. State</u>, --- So. 3d ----, 2018 WL 6442108, at *3 (Fla. 1st DCA Dec. 10, 2018); <u>Jackson v. State</u>, 241 So. 3d 914, 917 (Fla. 1st DCA 2018), *rev. denied*, 2018 WL 3239506 (Jul. 3, 2018), *cert. denied sub nom.*, <u>Jackson v. Fla.</u>, No. 18-6243, 2019 WL 113255 (Jan. 7 2019); <u>State v. Wilson</u>, 203 So. 3d 192, 193 (Fla. 4th DCA 2016), *rev. denied*, 2017 WL 1101449 (Fla. 2017); <u>Chapa v. State</u>, 159 So. 3d 361, 362 (Fla. 4th DCA 2015); <u>Lopez v. State</u>, 135 So. 3d 539, 540 (Fla. 2d DCA 2014).

The court in Lopez explained that the jury is not required, under the express exception set forth in Apprendi, to find the fact of a prior conviction, and that the date of a defendant's release from prison for that prior conviction is part of—and directly derivative from—the record of defendant's prior conviction.  Lopez, 135 So. 3d at 540; *see also* Calloway v. State, 914 So. 2d 12 (Fla. 2d DCA 2005).  The court in Calloway explained:

> While we recognize that the fact of Calloway's date of release from his prior prison sentence is not the same as a bare fact of a prior conviction, we conclude that it is directly derivative of a prior conviction and therefore does not implicate Sixth Amendment protections. *See* United States v. Pineda-Rodriquez, 133 Fed. Appx. 455, 458 (10th Cir. 2005) (holding that the fact of the date of defendant's release from custody and the fact that defendant was on supervision during commission of the instant offense fall under the prior conviction exception because they are "subsidiary findings" that are "merely aspects of the defendant's recidivist potential, . . . easily verified, and . . . require[ ] nothing more than official records, a calendar, and the most self-evident mathematical computation"); see also United States v. Garcia-Rodriguez, 127 Fed. Appx. 440, 451 (10th Cir. 2005) (holding that the prior conviction exception in Apprendi permits a court to find facts "intimately related" to the underlying prior conviction, such as whether the defendant is the same person who committed the prior crimes); Ryle v. State, 819 N.E. 2d 119 (Ind. App. 2004) (holding that the fact that the defendant was on probation at the time he committed the instant offense is derivative of his criminal history and does not implicate Blakely).

Calloway, 914 So. 2d at 14-15.

This court held in Mendelson v. Sec'y, Fla. Dep't of Corr., No. 5:16cv85-MW/EMT, 2018 WL 6537156, at *36 (N.D. Fla. Feb. 12, 2018), *Report and Recommendation adopted*, 2018 WL 6524162 (N.D. Fla. Dec. 12, 2018),[8] that a state court reasonably concluded that the fact of the date of the defendant's release from prison was analogous to the fact of a prior conviction because it demonstrated recidivism.  The district court in McGriff v. Sec'y, Dep't of Corr., No. 3:15cv1281-J-39JBT, 2018 WL 354956, at *6 (M.D. Fla. Jan. 10, 2018), also held that the fact that Petitioner committed his offense within three years of being released from prison is "analogous to the fact of a prior conviction as it demonstrates recidivism" and is not required to be found by a jury.  *See also* Kimmons v. McDonough, No. 3:04cv166-MCR/MD, 2006 WL 2583702, at *13 (N.D. Fla. Sept. 5, 2006) (stating in response to challenge that date of release from prison should have been found by the jury: "[P]etitioner's prior conviction and release are exactly the type of things that Apprendi indicated *did not* need to be determined by a jury." (emphasis in original)).  The Tenth Circuit held in United States v. Pineda-Rodriguez, 133 F. App'x 455, 458 (10th Cir. 2005), that the date of release from custody falls under the prior conviction

---

[8] Appeal filed January 9, 2019, Mendelson v. Fla. Dep't of Corr., Eleventh Circuit Court of Appeals No. 19-10130.

exception because it is a subsidiary finding that is merely an aspect of the defendant's recidivist potential.

In affirming denial of this claim on appeal from Petitioner's Rule 3.800(b)(2) motion, the state appellate court was silent as to its reasons. Ex. RR.  The Supreme Court has instructed that when the last adjudication of the state court is silent as to its basis, the habeas court should "look through" the silent adjudication to the last related decision on the merits; and there is a rebuttable presumption that the last adjudication was based on that earlier opinion.  Wilson v. Sellers, 138 S. Ct. 1188 (2018).  It can be presumed that in affirming denial of relief on Petitioner's claim that his sentence is illegal because a jury did not find the date of his release from custody, the appellate court was affirming the reasoning of the trial court that the fact of release from custody was subsumed within the "prior conviction" exception in Apprendi.  Based on the authorities discussed above, that adjudication was not contrary to or an unreasonable application of federal law.  However, it might also be noted that even if the appellate court had, *sub silentio*, agreed that a jury should have made such a finding, the error would have been subject to harmless error analysis and denial on that ground would have not been an unreasonable application of any federal law.

Failure to submit a sentencing factor to the jury in violation of Apprendi is not structural error and is subject to harmless error analysis. *See* Washington v. Recuenco, 548 U.S. 212, 218-19 (2006); Hurst v. State, 202 So. 3d 40, 67 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017).  At the original sentencing hearing in this case held on October 18, 2006, the State presented evidence that Petitioner was released from prison within three years of the date of offense for which he was convicted.  Ex. C at 118-26. Accordingly, even assuming the validity of Petitioner's argument that the date of release should have been submitted to the jury, the state appellate court could have concluded that any error in sentencing was harmless beyond a reasonable doubt because any rational jury, if presented with that same evidence, would have found Petitioner was released from prison within three years of the date of Petitioner's offense.  *See, e.g.*, Neder v. United States, 527 U.S. 1, 18 (1999) (holding that errors that affect the jury's factfinding role and deliberative process are subject to the same harmless error inquiry: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?"); United States v. Nealy, 232 F.3d 825, 829-30 (11th Cir. 2000) (finding that Apprendi error is subject to harmless error analysis), *cert. denied*, Nealy v. United States, 122 S. Ct. 552 (2001); Plasencia v. Sec'y, Fla. Dep't of

Corr., 606 F. App'x 511, 515 (11th Cir. 2015) (unpublished) (reiterating that failure to submit a sentencing error to the jury is not structural and is subject to harmless error analysis).

Thus, for all the foregoing reasons, the adjudication of this claim by the state court has not been shown to be contrary to any clearly established federal law as determined by the Supreme Court or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  Ground 3 should be denied.

## Ground 4: Due Process and  Double Jeopardy

Petitioner contends that he was resentenced to a greater sentence than the one he had already served for the same crime, violating his right to Due Process and his Fifth Amendment right not to be twice placed in jeopardy for the same offense.  ECF No. 1 at 30.  After Petitioner filed a successful motion to correct sentence on the basis that his offense did not qualify him for PRR sentencing, he was sentenced to 75 months in prison. The State appealed the favorable ruling and the First District Court of Appeal affirmed.  Ultimately, the Florida Supreme Court quashed the decision of the First District Court of Appeal and remanded for proceedings consistent with the decision, which held that PRR sentencing for burglary of

a conveyance with an assault was a qualifying offense for the PRR life sentence Petitioner received.  Exs. R, S.  The First District Court of Appeal remanded to the trial court, which vacated the order granting the motion to correct sentence and reinstated the mandatory PRR life sentence.

Petitioner argues here as he did in the state court that reinstating the PRR life sentence after he had completed the 75-month sentence violated the prohibition against double jeopardy.  Ex. T at 260.  The trial court disagreed, stating:

> [T]he procedural posture that we're in is that Mr. Hackley was originally, as we now know from the Florida Supreme Court's decision, sentenced correctly.
> And what my reading of the Florida Supreme Court opinion is that I'm really just reimposing the sentence that was originally imposed.  The procedural posture of the case when it was reversed was that Mr. Hackley had filed a motion for - - to correct an illegal sentence, which I had granted.  The State took an appeal and reversed that decision that I made. . . .
> . . . .
> So I don't see that I have any - - I don't see that I have any absolutely any legal authority, other than to reimpose the sentence that was originally imposed.  . . . .
> . . . .
> No, the different here is Mr. Hackley was not serving an illegal sentence. Mr. Hackley was - - Mr. Hackley got the benefit of an incorrect legal ruling is the only thing that I see.

Ex. T at 262-64.  The trial court, "in conformance with the Florida Supreme Court's mandate," then vacated the order that had concluded the original PRR life sentence was illegal and stated, "the judgment that is now

operative is the original judgment issued October 30, 2006, in which Mr. Hackley was adjudicated guilty of the offense - - burglary of a conveyance with person assaulted, sentenced to mandatory life in prison pursuant to the Prison Releasee Reoffender Act." *Id.* at 267.

Petitioner appealed from reinstatement of this sentence and, during the pendency of that appeal, filed a Rule 3.800(b)(2) motion alleging that the life sentence violated Double Jeopardy and Due Process rights because he had completed his 75-month sentence. Ex. W at 303-06. The trial court denied the Double Jeopardy claim, noting that it had been raised in the hearing where the PRR life sentence was reinstated. *Id.* at 307-08. Petitioner appealed and raised the Double Jeopardy claim in the First District Court of Appeal. Ex. NN at 19. The appellate court affirmed denial of the claim without discussion. Ex. RR.

Petitioner argues here that after he was sentenced to 75 months, "unbeknownst to Mr. Hackley, the State continued to pursue an appeal of the seventy-five month sentence, seeking re-imposition of the original sentence." ECF No. 1 at 32. He contends that "[a]ll the while, Mr. Hackley maintained belief that his case had concluded" and that after he completed his 75-month sentence, "he had a legitimate expectation of finality in his sentence." *Id.* at 32-33. The State responds that Petitioner could not have

had a legitimate expectation of finality because the 75-month sentence was appealed and the original PRR life sentence was found to have been legally imposed.  It should be noted that Petitioner had counsel during the State's appeal from the order finding the original sentence illegal and during the review proceeding in the Florida Supreme Court.  *See* Exs. L, O, P, Q.  Thus, it is disingenuous to argue that Petitioner was totally unaware of the appeal proceedings that resulted in a ruling that the original PRR sentence was legal.  Moreover, the "Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner" and "neither the Double Jeopardy Clause nor any other constitutional provision exists to provide unjustified windfalls" to defendants.  Jones v. Thomas, 491 U.S. 376, 387 (1989).

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const., amend. V.  This protection is applicable to the states through the Fourteenth Amendment.  Benton v. Maryland, 395 U.S. 784, 787 (1969).  The Double Jeopardy clause protects against three abuses—a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.  North Carolina v. Pearce, 395 U.S.

711, 717 (1969), *overruled on other grounds*, Alabama v. Smith, 490 U.S. 794, 795 (1989).

Double jeopardy is a question of state law not generally cognizable on habeas review.  In deciding if a double jeopardy violation has occurred, the federal courts will accept the state courts' interpretation of the state's own statutes.  Missouri v. Hunter, 459 U.S. 359, 368 (1983).  *See also* Williams v. Singletary, 78 F.3d 1510, 1517 (11th Cir. 1996) (relying on Florida Supreme Court authority for remedy to double jeopardy violation). State courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.  Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997).

If, however, a defendant's sentence is vacated, resentencing may implicate the Due Process Clause if the trial court imposes a harsher punishment than the original sentence.  *See* Pearce, 395 U.S. at 723-26. Even so, the Supreme Court has held that the Due Process clause does not absolutely preclude a harsher sentence upon reconviction.  Blackledge v. Perry, 417 U.S. 21, 27 (1974) (holding that "the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.' ").  In the instant case, even if the reinstatement of the

original sentence can be characterized as a resentencing, Petitioner did not receive a harsher sentence than his original legal sentence, which was found by the Florida Supreme Court to have been validly imposed under Florida law.

It was upon Petitioner's motion that the trial court erroneously vacated his original PRR sentence and imposed a 75-month sentence. The State reasonably appealed to reinstate the original sentence. A defendant has a legitimate expectation of finality <u>after</u> all appeals; and, "the Government's taking a review of respondent's sentence does not in itself offend double jeopardy principles just because its success might deprive respondent of the benefit of a more lenient sentence." <u>United States v. DiFrancesco</u>, 449 U.S. 117, 132, 136 (1980). Further, "the double jeopardy clause does not require that a sentence be given a degree of finality that prevents its later increase. *Id.* at 137.

Because Petitioner did not have a legitimate expectation of finality in the 75-month sentence and because the court simply reinstated the legal PRR sentence that Petitioner originally received after the State's successful appeal, the state court's adjudication of this claim was not objectively unreasonable or contrary to any federal law as determined by the United States Supreme Court. Ground 4 should be denied.

## **Ground 5: Ineffective Assistance of Counsel**

In his last ground, Petitioner contends that trial counsel rendered ineffective assistance for failing to file a timely notice of appeal from the original 2006 judgment and life sentence.  ECF No. 1 at 36.  He also contends that subsequent counsel rendered ineffective assistance in 2008 after filing a notice of appeal from the 2006 judgment and sentence but failing to pay a filing fee without Petitioner's knowledge, causing the appeal to be dismissed.[9]  *Id.*  He argues that the issue of ineffective counsel did not become "ripe" until the State obtained a ruling in the Florida Supreme Court that his offense was a qualifying offense under the PRR act and his life sentence was reinstated in 2012.  *Id.* at 37.  He asks that the life sentence be vacated and that he be allowed to appeal the original trial orders and judgment of conviction.  *Id.*  Respondent contends that the claims are unexhausted and procedurally defaulted because Petitioner did not raise the ineffective assistance claims in a belated appeal proceeding

---

[9] The notice of appeal, Ex. A at 59, was untimely and the district court of appeal issued an order to show cause why the appeal should not be dismissed as untimely. Ex. D.  No ruling was entered on the timeliness of the appeal, which was ultimately dismissed for failure to pay a filing fee.  Ex. G.

after the reinstatement of his PRR life sentence (1D13-5767) or in the appeal from that sentence (1D13-5934).  ECF No. 23 at 52.

Respondent notes that the issue of ineffectiveness of appellate counsel was mentioned by Petitioner's attorney in the hearing on November 29, 2012, when the PRR sentence was reinstated, although the trial court did not rule on that contention.  ECF No. 23 at 51-52.  Instead, the judge stated that the issue should be raised in a petition for belated appeal in the appellate court.  Respondent also notes that a petition for writ of habeas corpus seeking a belated appeal was filed during Petitioner's appeal from the reinstatement of his PRR sentence and given a separate case number.  That petition alleged that trial counsel and subsequent counsel were ineffective—at least under state law—for failing to file or perfect an appeal in the state court after being requested to do so.[10]  Ex. BB at 6.  No federal constitutional claim for ineffective assistance was argued to the appellate court in Petitioner's Response to the Special Master's Report recommending that a belated appeal should not be granted.  Ex. HH.  The petition for belated appeal was denied by the state court and Petitioner sought certiorari review in the United States Supreme

---

[10] The petition for belated appeal cited state case law and the Florida Constitution.  Ex. BB at 7, 9.

Court, Ex. KK.  In his petition for writ of certiorari, Petitioner argued that his due process rights were violated by denial of the right to a belated appeal. Ex. KK at ii.  The United States Supreme Court denied review.  Ex. LL. Respondent is correct that the state court was not provided an opportunity to rule on a federal claim of ineffective assistance of counsel *vis a vis* denial of a belated direct appeal from his conviction.  No federal constitutional claim of ineffective assistance of trial or appellate counsel was argued in a Rule 3.850 motion, in the belated appeal proceedings, or in the appeal from the reinstated sentence.  *See* Ex. NN.

As noted earlier, Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim.  Henry, 513 U.S. at 365; Picard, 404 U.S. at 275; O'Sullivan, 526 U.S. at 845.  This is required in order to give the State the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Henry, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275 (citation omitted)).  Petitioner's federal claim for ineffective assistance of counsel is, thus, unexhausted and procedurally defaulted.

Petitioner has not demonstrated cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Petitioner has not shown that an "external impediment" prevented him from raising the

federal claim.  Alderman, 22 F.3d at 1551; *see also* McCleskey, 499 U.S. at

497.  Nor has he met the miscarriage of justice exception.  Petitioner has

not shown that a constitutional violation has occurred that "probably

resulted in a conviction of one who is actually innocent"— which is a

stronger showing than is necessary to establish prejudice.  *See* Schlup,

513 U.S. at 327.

Regardless of any procedural default, even if the issue of federal

ineffective assistance of counsel had been raised below, this ground is

without merit and should be denied.  After the petition for belated appeal

was filed, the appellate court relinquished jurisdiction to the trial court for a

circuit judge to act as special master and hold an evidentiary hearing,

which was held on May 22, 2014.  Ex. FF.  The special master was tasked

with answering four questions: (1) whether a timely request for an appeal

was made by Petitioner following rendition of the 2006 judgment and

sentence; (2) whether Petitioner's actions or inactions following dismissal of

the untimely 2008 appeal in case number 1D08-4665 constituted

abandonment or waiver; (3) whether Petitioner exercised due diligence in

pursuing a belated appeal so as to avoid a two-year time limit in Florida

Rule of Appellate Procedure 9.141 (2006); and (4) whether prejudice to the

State resulted from Petitioner's delay in seeking a belated appeal warrants application of the doctrine of laches. Ex. EE.

At the evidentiary hearing, after hearing testimony from Petitioner's 2006 trial attorney, his 2008 alleged appellate attorney, and another counsel, the special master found (1) no timely request for an appeal was made to trial counsel in 2006; (2) there was no evidence that Petitioner was involved in the appeal process in the 2008 appeal (1D08-4665) so there is no evidence of abandonment or waiver; (3) there is no direct evidence that Petitioner was aware of his right to appeal, but there is circumstantial evidence that he received a limited explanation of his right to appeal; thus, he did not exercise due diligence; and (4) there was delay that prejudices the State. Ex. FF at 83-84.

The special master found after a hearing that Petitioner did not make a timely request to his trial attorney in 2006 for the filing of an appeal from his conviction. A defendant is generally not entitled to a belated appeal where he failed to establish that he timely requested his trial counsel to file an appeal. *See* <u>Capers v. State</u>, 48 So. 3d 934, 935 (Fla. 3d DCA 2010). The finding that Petitioner did not request his trial counsel to file an appeal is supported by the testimony of Petitioner's trial attorney, Ms. Dandelake, who testified that there were no discussions with Petitioner about taking an

appeal after trial or after sentencing and that he never asked her to file a notice of appeal. Ex. FF at 25-28, 31. She testified that she did not advise him about his right to seek an appeal partly because she knew he had experience in the judicial system and would have known of that right and partly because they were not getting along very well. *Id.* at 30. The special master noted that there was some circumstantial evidence in the court documents that included a limited explanation of Petitioner's right to appeal. Ex. FF at 83. *See also* Ex. A at 54 (October 30, 2006, Judgment and Sentence).

As for the untimely appeal filed in 2008 under the signature of attorney Eagen, he testified at the evidentiary hearing that he had no recollection of any dealings or conversations with Petitioner—testimony that was accepted by the special master. *See* Ex. FF at 84. Eagen testified that he reviewed his files and could find nothing relating to Petitioner. Ex. FF at 38. He could not explain the filing that appeared under his signature. He testified that he did not practice appellate law in 2008 and had no recollection of filing any motions or pleadings for Petitioner. *Id.* Moreover, the notice of appeal filed in 2008 was untimely and would likely have been dismissed regardless of whether a filing fee was paid. Attorney Hobbs, another attorney who filed Petitioner's Rule

3.800(b)(2) motion contending that burglary of a conveyance with an assault was not a qualifying PRR offense, testified at the evidentiary hearing that when she met with Petitioner, he did not ask her to file a petition for belated appeal of the original conviction.  Ex. FF at 51.

The special master made credibility determinations as to the factual findings required by the state district court of appeal.  Under § 2254(e)(1), these factual findings are given deference and presumed correct.  Nejad v. Attorney Gen., State of Georgia, 830 F.3d 1280, 1292 (11th Cir. 2016). The Eleventh Circuit reiterated:

> The deference compelled by AEDPA "requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations."  Turner v. Crosby, 339 F.3d 1247, 1273 (11th Cir. 2003) (quotation omitted). Instead, "[i]n the absence of clear and convincing evidence, we have no power on federal habeas review to revisit the state court" credibility determinations."  Bishop [v. Warden, GDCP, 726 F.3d 1243, 1259 (11th Cir. 2013] (emphasis added).

Id. at 1292 (alteration added) (emphasis in original).  See also Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.").  The presumption of correctness applies to both implicit and explicit factual findings.  See Marshall v. Lonberger, 459 U.S. 422, 433 (1983); Young v. Dretke, 356 F.3d 616, 629 (5th Cir. 2004).  Credibility and demeanor of a witness are

considered to be questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence.  <u>Consalvo</u>, 664 F.3d at 845. After answering the four questions posed by the district court of appeal, the special master recommended that a belated appeal be denied.  The findings of the special master were reviewed and implicitly adopted by the state appellate court, which held that a belated appeal was not warranted and denied the petition for writ of habeas corpus for belated appeal on the merits.

Regardless of any procedural default, this ground should be denied. Petitioner has not demonstrated that this adjudication was objectively unreasonable or incorrect.  The ruling has not been shown to be contrary to any federal law as determined by the Supreme Court and or unreasonable in light of the evidence and state court record.  Accordingly, federal habeas relief sought in Ground 5 should be denied.

## <u>Conclusion</u>

Based on the foregoing, Petitioner Lester Hackley is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## <u>Certificate of Appealability</u>

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.  The Clerk of Court shall substitute Mark S. Inch for Julie Jones as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on January 28, 2019.

s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**